IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-60322
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT GERALD SKINNER, also known
as Eddie Willis, also known as
Lavar Skinner, also known as
Robert Sharp, also known as Rocko,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(1:97-CR-48-1)
_____

August 19, 1999

Before JOLLY and SMITH, Circuit Judges, and STAGG,[*] District Judge.

E. GRADY JOLLY, Circuit Judge:[**]

In this case, Robert Gerald Skinner appeals a criminal
conviction for possession of cocaine with intent to distribute.
Skinner was arrested by officers of the Gulfport Police Department
after a routine traffic stop.  After the arrest, the police
impounded his car.  During an inventory search prior to his car's
being towed, the police discovered a closed black book bag.  Upon

_____

[*]District Judge of the Western District of Louisiana, sitting
by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

opening it, they discovered approximately three kilograms of cocaine.

The only meritorious argument Skinner raises on appeal is that the district court erred when it denied Skinner's motion to suppress the evidence discovered in the bag, concluding that the police conducted a valid inventory search. With respect to the other issues that Skinner raises, we find no reversible error.

The sole question before us, then, is whether an inventory search like the one conducted here violates the Fourth Amendment. In Colorado v. Bertine, 479 U.S. 367, 374 (1987), the Supreme Court indicated that, provided there are "police regulations relating to inventory procedures administered in good faith," the Fourth Amendment is satisfied. We subsequently held in U.S. v. Judge, 846 F.2d 274, 276 (5th Cir. 1988), that a "standard procedure to inventory seized vehicles," does not provide sufficient evidence of a policy with respect to closed containers to permit opening of closed containers. Instead, there must be "testimony that agents relied upon standardized criteria mandating that closed containers be opened during an inventory search." In Florida v. Wells, 495 U.S. 1, 4 (1990), the Supreme Court addressed the issue of whether a policy would have to require all containers to be opened, stating that, although there must be a standardized procedure with respect to inventorying closed containers, such a procedure may afford police officers discretion when determining whether or not a container should be opened. Based on our cases and Supreme Court

2

precedent, then, there must be some testimony with respect to the procedure for inventorying closed containers. The procedure need not be written and it need not bind the police officer to open every closed container, but, under Judge, there must be some testimony with respect to the standard operating procedure for inventorying closed containers.

In this case, there is testimony during a suppression hearing and at trial with respect to the inventorying procedures the officers followed. At the suppression hearing, Officer Battle gave the following testimony:

> Q: Okay. Based upon your training with the Gulfport Police Department, when you have a vehicle towed are there any certain procedures you're supposed to follow?
>
> A. We have an inventory form which we record any assets and the condition of the vehicle and so forth like that.
>          *     *     *
> Q: Now, tell the court why you do an inventory search before you turn it over to a private towing company.
> A. To record any assets so that if later on down the line the defendant says he had such-and-such article in there, we can say either yes, he did, or no, he didn't. It's to keep a record of any assets.
> Q: Okay. And that's standard police procedure.
> A. Yes, sir. It's in our manual.[1]

Then, during the trial itself, Officer Young gave the following testimony:

> Q: . . . Why were you doing a vehicle inventory?
> A. It's department policy that anytime a subject's arrested that we do a vehicle impound--inventory before we release the vehicle to a privately owned towing company.
>          *     *     *

---

[1]The police manual is not in the record on appeal.

3

B:   All right.  Tell us what you did.  What was your duty and what did you do?

A.   My duty was to do the vehicle impound sheet,[2] at which time I went to the front seat.  I observed a cellular phone and I think a few CDS sitting on the front seat.  I noted on a note pad that--what was in the vehicle.  I then was going to place it in the back of the trunk for safekeeping, at which time I opened the trunk and observed a black gym bag.

Q:   Okay.  Now, stop right there.  When you do a vehicle impound report or--do a vehicle impound report, that's an inventory of the contents of the vehicle.

A.   Yes, it is.

Q:   All right.  And do you do that according to police procedure?

A.   Yes, I do.

                    *     *     *

Q:   And what are you inventorying for?

A.   Just for the personal belongings in the vehicle, just for the department's liability and for the person's sake too so that we can list anything that's in the vehicle so in case it comes up missing, we can show that it was in the vehicle at the time of the stop and the impoundment.

Q:   Okay.  So you make an inventory to protect the property in the vehicle

A.   Yes.

Q:   All right.  Now, did you--Was it standard police procedure to--On that date, according to your training, was it standard police procedure, when you inventoried the contents of the vehicle, you would also inventory the contents of the trunk?

A.   Yes. . . .

                    *     *     *

Q:   Okay.  Now, when you opened the trunk and you--tell us what you observed.

A.   The only thing in the trunk that I observed was a black gym bag.

Q:   Okay.  And when you observed the black gym bag, what is it you did?

A.   I opened it up just to make sure there's no other personal belongings that was inside the gym bag.

Q:   And what did you observe when you looked inside the gym bag?

_____

     [2]The vehicle impound sheet is also not in the record on appeal.

4

A.    They had camouflage pants on top; and when I pulled the pants up a little bit, I observed what I thought to be a large amount of cocaine.

Based on this testimony, it is apparent that the Gulfport Police Department procedure was to inventory <u>all</u> personal belongings in a vehicle prior to towing it and to record such assets.  It is clear that pursuant to this policy, Officer Young opened the bag to identify any additional personal belongings and add them to the inventory.  We therefore conclude that there was adequate testimony of Gulfport Police Department procedure with respect to inventorying closed containers for the district court to conclude that the officers conducted a valid inventory search.

A F F I R M E D.

5